**Slip Op. 02-88**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

_____ :
                                                                :
NTN BEARING CORPORATION OF AMERICA,   :
AMERICAN NTN BEARING MANUFACTURING    :
CORPORATION and NTN CORPORATION;      :
NSK LTD. and NSK CORPORATION;         :
KOYO SEIKO CO., LTD. and KOYO         :
CORPORATION OF U.S.A.,                :
                                                                :
        Plaintiffs and            :
        Defendant-Intervenors,    :
                                                                :
        v.                        :     Consol. Court No.
                                                                :     98-01-00146
UNITED STATES,                        :
                                                                :
        Defendant,                :
                                                                :
        and                       :
                                                                :
THE TIMKEN COMPANY,                   :
                                                                :
        Defendant-Intervenor      :
        and Plaintiff.            :
_____ :

## ORDER

On the above-captioned matter, the Court received the following: (a) <u>Draft Results of Redetermination Pursuant to Court Remand</u> ("<u>Draft Results</u>") in <u>NTN Bearing Corp. v. United States</u>, 26 CIT ___, 186 F. Supp. 2d 1257 (2002), and <u>Final Results of Redetermination Pursuant to Court Remand</u> ("<u>Remand Results</u>") in <u>NTN Bearing Corp. v. United States</u>, 26 CIT ___, 186 F. Supp. 2d 1257 (2002), issued by the United States Department of Commerce, International Trade Administration ("Commerce"); (b) <u>Comments</u>

Regarding the Remand Determination ("Preliminary Comments") by NTN
Bearing Corporation of America, American NTN Bearing Manufacturing
Corporation and NTN Corporation ("NTN") dated July 15, 2002, and
addressing Commerce's Draft Results; and (c) a letter by The Timken
Company ("Timken") of July 24, 2002, advising the Court of Timken's
intent to file comments in response to those comments that might be
filed by NTN in response to Commerce's Remand Results, and Timken's
response to NTN's comments regarding Commerce's Remand Results
dated August 5, 2002.[1]

In its Preliminary Comments, NTN asserts that Commerce erred
in refusing to exclude those sales where the gross unit price plus
billing adjustment equaled zero from NTN's dumping margin.  NTN
maintains that the Court's order that mandated Commerce to exclude
NTN's zero-priced sales from NTN's dumping margin should have
encompassed  NTN's zero-priced sales as well as  those NTN's sales
where the gross unit price plus billing adjustment equaled zero.
Pointing to the fact that NTN's margin was raised, rather than

---

[1]

Timken's response addresses the arguments raised by NTN in
Preliminary Comments as if these comments were submitted by NTN in
response to Commerce's Remand Results.  The Court assumes that
Timken's actions are caused by NTN's failure to submit NTN's
response to Commerce's Remand Results.  In the fashion analogous to
that of Timken, the Court assumes that NTN's failure to submit
comments to Commerce's Remand Results: (a) constitutes a waiver of
NTN's right to submit comments to Commerce's Remand Results; and
(b) indicates NTN's desire to stand by the arguments raised by NTN
in NTN's Preliminary Comments.

lowered, after Commerce has made Commerce's recalculation, NTN concludes that the abnormality of such effect is a per se indication of Commerce's misinterpretation of the Court's order. Commerce contends that Commerce's actions were in accordance with the Court's order remanding the underlying case, and Timken supports Commerce's position.

The Court agrees with Commerce and Timken. Indeed, a zero-priced sale (that is, a transaction made inherently for no consideration) is a form of business dealing that is entirely different in nature from a sale where the gross unit price plus billing adjustment equaled zero (that is, a transaction made for a consideration that was eventually offset by an adjustment given for certain business reasons). Furthermore, the fact that NTN's margin rose as a result of Commerce's recalculation has absolutely no relevance to the issue of interpretation of the Court's mandate, since the change in margin was caused by Commerce's correction of a ministerial error.[2] Therefore, this Court, having received and reviewed the aforesaid documents holds that Commerce duly complied

---

[2] Commerce initially relied on incorrect cost of production data provided by NTN. Commerce corrected this oversight and, consequently, recalculated NTN's margin for Commerce's Remand Results. Had NTN been unhappy with Commerce's recalculation, NTN should have asserted its grievances accordingly. The Court, however, fails to fancy a viable legal theory which prohibits an agency from correcting its calculative error as long as the agency applies the correct legal principle.

with the Court's remand order, and it is hereby

**ORDERED** that the <u>Remand Results</u> are affirmed in their entirety; and it is further

**ORDERED** that since all other issues have been decided, this case is dismissed.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:    August 12, 2002
          New York, New York